UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| THE SCOTT FETZER COMPANY, | Case No. 19-cv-01296 |
| Plaintiff, | Hon. Pamela A. Barker |
| v. | |
| MARCUS QUINN, ET AL., | |
| Defendants. | |
| MARCUS QUINN, NATHAN RAMKER AND SUNFLORA, INC., | |
| Counterclaimants, | |
| v. | |
| THE SCOTT FETZER COMPANY, | |
| Counterclaim Defendant. | |

**MEMORANDUM OF DEFENDANTS AND COUNTERCLAIMANTS IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**

I.     <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Plaintiff and counterclaim defendant The Scott Fetzer Co.'s ("Kirby")[1] action arises from a purported breach of Distributor Agreements by Marcus Quinn ("Quinn") and Nathan Ramker ("Ramker"), two independent contractor distributors who Kirby terminated. Kirby sued Quinn and Ramker for this alleged breach of contract (Count I), but overreached by asserting four tort claims (Counts II through V) against them and also naming as a defendant SunFlora, Inc. ("SunFlora"), a separate, noncompetitive business that Quinn and his wife formed and operate (collectively with Quinn and Ramker, the "SunFlora Defendants"). The SunFlora Defendants

---

[1] The Complaint concerns claims by The Scott Fetzer Co.'s unincorporated division The Kirby Co.

are confident that the evidentiary record developed during discovery will ultimately demonstrate the baselessness of Kirby's breach of contract claim (Count I) and support the SunFlora Defendants' counterclaims. But judgment on the pleadings in favor of the SunFlora Defendants is warranted and appropriate to resolve Kirby's four tort claims now.

Kirby's Counts II and III respectively allege tortious interference with contract and with prospective business relations. Each fails to state a plausible claim. Count II is devoid of any facts identifying the particular contracts that Kirby had with others that were breached or not consummated. Count III similarly fails to plead the existence of even a single "business relationship" with a distributor trainee "that approaches the formality of contract," let alone the distributor trainees in question. These material omissions render each count speculative, conclusory recitations of legal propositions, precluding Kirby from satisfying the factual pleading requirements to establish a plausible claim for each tort.

The gravamen of Kirby's unfair competition claim (Count IV) is that the SunFlora Defendants "raided" independent contractors affiliated with Kirby – which makes and sells vacuum cleaners – to work for or open SunFlora retail stores, which sell CBD-infused products. Whatever the rhetorical impact of the term "raiding," it is not unlawful absent some formal agreement to the contrary or the theft of protected confidential information. Kirby alleges only the former, and thus parrots the very same breach of contract claim it asserts in Count I, which avers that Quinn and Ramker violated non-solicitation clauses in their Distributor Agreements with Kirby. Because Kirby may not "tortify" its breach of contract count by recasting it as an unfair competition claim, the Court should dismiss it.

Kirby's civil conspiracy claim (Count V) should likewise be dismissed because it fails to state a plausible claim for relief, instead pleading only conclusory allegations. Each argument is explained in further detail below.

## II. ALLEGED FACTS RELEVANT TO THIS MOTION

Kirby designs and makes vacuum cleaners it touts as "home care systems." Cmplt. ¶ 10. New Kirby vacuum cleaners and accessories are sold only to consumers through in-home demonstrations – essentially through door-to-door sales efforts. *See id.* Kirby sells its vacuums through a pyramid-shaped, multi-level direct sales network of independent contractors. At the top of the pyramid are distributors, "the lifeblood of Kirby's business model. They are responsible for promoting, maintaining, and increasing in-home sales and use of Kirby's home cleaning systems through the development of an independent sales force." *Id*.

> Typically, a distributor recruits dealers to join his or her sales team and helps them learn Kirby's direct-sales methodology. The distributor subsequently may recommend that certain dealers be appointed to the position of distributor trainee. Dealers and distributor trainees are independent contractors of particular distributors. Ultimately, a distributor trainee may operate his or her own distributorship if recommended by his or her appointing distributor and approved by Kirby.

*Id.* ¶ 12.

Defendants Quinn and Ramker were longtime, successful Kirby distributors. *Id.* ¶¶ 18-21 (Quinn) and 22-25 (Ramker). Kirby alleges that in May 2018, Quinn also formed and began running SunFlora as a side business. *Id.* ¶¶ 26-27. SunFlora sells hemp-derived CBD products.[2] *Id.* ¶ 27. Kirby alleges that it "became aware that Quinn directly or indirectly was soliciting and attempting to recruit active Kirby distributors to become involved in selling or promoting CBD

---

[2] "CBD" is a common acronym for cannabidiol. Unlike the similar sounding cannabinol and cannabinodiol compounds derived from cannabis – such as tetrahydrocannabinol (THC) – CBD is not psychoactive and is legal under U.S. law.

- 3 -

products. One of the distributors he convinced to become involved in the sale of SunFlora's products was Ramker." *Id.* ¶ 28.

Kirby contends that "Ramker and his wife began operating multiple stores selling SunFlora's products in Iowa," and that Ramker's son "opened a store selling CBD products in Missouri. Ramker, his wife, and his son then began soliciting and recruiting Kirby distributors to become involved in selling CBD products." *Id.* ¶ 29.

On October 23, 2018, Kirby unilaterally issued a written statement it characterized as a new policy titled, "Factory Distributor Policy Regarding Prohibited Business Involvement" (the "CBD Policy"). *Id.* ¶15. Kirby alleges that it issued the CBD Policy "because companies that sell products containing [CBD] are proselytizing Kirby's distributors and top salespeople in an attempt to recruit them to sell CBD products." *Id.* "By its terms, the Policy applies to both distributors and distributor trainees who 'own[], or operate[], or whose spouse, or significant other or immediate family member owns or operates, a business that sells cannabinoid products including CBD.'" *Id.* ¶ 17.

Kirby unilaterally terminated its Distributor Agreement with Quinn effective February 18, 2019, accusing him of "violating his Distributor Agreement by selling CBD products and soliciting and recruiting active distributors to do the same." *Id.* ¶ 30. Kirby terminated its Distributor Agreement with Ramker effective February 2, 2019.

### III. ARGUMENT

#### A. THE STANDARDS GOVERNING THIS MOTION

This Court recently recited the standard governing this motion:

> Pursuant to Rule 12(c), "[a]fter the pleadings are closed--but early enough not to delay trial-a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of

> the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (citation omitted).
>
> The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings. *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

*Thomas v. Amazon.com Servs.*, No. 1:19-CV-01696, 2020 U.S. Dist. LEXIS 89882, at *5-7 (N.D. Ohio May 21, 2020) (Barker, J.).

> In determining a motion under Rule 12(b)(6),
>
>> the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). The court need not, however, accept conclusions of law as true:
>>
>>> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *[Bell Atlantic Corp. v.] Twombly*, 550 U.S. 544 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id*. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557.
>>>
>>> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*., at 570. A claim has facial plausibility when the

- 5 -

> plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*., at 557 (brackets omitted).
>
> *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Weisbarth*, 499 F.3d at 541 (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)).

*Tovey v. Nike, Inc.*, Case No. 1:12-cv-0448, 2012 U.S. Dist. LEXIS 185715, at *8-10, 2102 WL 7017821 (N.D. Ohio July 3, 2012).

### B. KIRBY FAILS TO PLEAD PLAUSIBLE TORTIOUS INTERFERENCE CLAIMS

Each of Kirby's tortious interference counts lacks facts sufficient to sustain a plausible claim under the governing legal standards described above.

#### 1. KIRBY'S TORTIOUS INTERFERENCE WITH CONTRACT CLAIM FAILS

Ohio law regarding tortious interference with contracts straightforwardly imposes liability on:

> "one who, *without a privilege to do so*, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship with another, or perform a contract with another." *Wright v. MetroHealth Medical Center*, 58 F.3d 1130, 1138 (6th Cir. 1995) [emphasis in original] (citing *Smith v. Klein*, 23 Ohio App. 3d 146 (1985)). The elements of tortious interference with contract are: (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) lack of justification; and (5) resulting damages. *Kenty v. Transamerica Prem. Ins. Co.*, 72 Ohio St. 3d 415 (1995).

*Reynolds & Reynolds Co. v. Superior Integrated Sols., Inc.*, Case No. 1:12-cv-848, 2013 U.S. Dist. LEXIS 79573, at *25; 2013 WL 2456093 (S.D. Ohio June 6, 2013) (emphasis added).

Kirby's Count II – alleging tortious interference with contract – "does not plausibly plead all of these elements." *Id.* at *26. Kirby alleges only in conclusory terms, that "Quinn and Ramker, acting on behalf of themselves and SunFlora, [somehow, without any factual elaboration] caused and have attempted to cause numerous [unidentified] Kirby distributors to breach their Distributor Agreements by failing to devote their best efforts to their distributorships [in undescribed ways] and by failing to adhere to the Policy [in similarly undescribed ways]." Cmplt. ¶ 50.

Kirby's deficient allegations mirror the allegations that the district court in *Reynolds & Reynolds* rejected as insufficient. In that case, the district court specifically observed that the amended counterclaim of SIS "pleads that certain contracts exist but does not identify specifically who the contract may be with or identify any of the terms of these alleged contracts. Also, SIS does not plead how these contracts have been breached and does not plead damages in the form of which of the alleged contracts were lost." *Reynolds & Reynolds*, 2013 U.S. Dist. LEXIS 79573, at *26. Kirby pleads the existence of "numerous Kirby distributors" who purportedly breached "their Distributor Agreements," but "does not identify specifically *who* the contracts may be with." *Id.* (emphasis added). Kirby likewise fails to plead any facts describing *how* the SunFlora Defendants purportedly caused "numerous Kirby distributors to breach their Distributor Agreements by failing to devote their best efforts to their distributorships."

Kirby also critically fails to plead *when* the SunFlora Defendants engaged in their alleged tortious interference, and in one of the few instances in which Kirby has chosen to plead facts they serve only to underscore the implausibility of its interference with contract claim. Consider

first that Kirby pleads that SunFlora was formed in May 2018. Cmplt. ¶ 27. Kirby also pleads that on October 8, 2018, it first sent Quinn a letter demanding that he "cease and desist violating his Distributor Agreement by selling CBD products and soliciting and recruiting active distributors to do the same." Cmplt. ¶ 30. Kirby admits that only weeks *after* sending this letter did it issue the unilateral CBD Policy on October 23, 2018. *Id.* ¶ 15.

In light of this timeline that Kirby elected to reveal in its pleading, it is remarkable that Kirby nowhere even attempts to explain how or why distributors could breach their Distributor Agreements with Kirby "by failing to adhere to the Policy" (*id.* ¶ 50) before Kirby had even issued it. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (explaining that "a plaintiff can . . . plead himself out of a claim by including unnecessary details contrary to his claims"), *cited with approval in Jones v. City of Cincinnati*, No. 1:04-CV-616, 2006 U.S. Dist. LEXIS 75430, *14 (S.D. Ohio Oct. 17, 2006).

Because Kirby fails to plead plausible facts regarding multiple elements of Count II, it must be dismissed.

### 2. KIRBY'S TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS CLAIM FAILS

"Under Ohio law, the tortious interference with contract and tortious interference with business relationships are closely related." *Tovey*, 2012 U.S. Dist. LEXIS 185715, at *43. "The elements of tortious interference with a business relationship are (1) a business relationship, (2) the wrongdoer's knowledge thereof, (3) an intentional interference causing a breach or termination of the relationship, and (4) damages resulting therefrom." *Id.* at *44 (citing *Geo-Pro Servs., Inc. v. Solar Testing Labs., Inc.*, 145 Ohio App. 3d 514, 523 (2001)). "The 'business relationship' is a relationship that approaches the formality of contract." *Tovey*, 2012 U.S. Dist. LEXIS 185715, at *44.

- 8 -

Just as the two tortious interference claims "are closely related" (*id.* at *43), the pleading deficiencies of Kirby's two tortious interference claims are closely related. For Count III, alleging tortious interference with prospective business relations, Kirby alleges that the SunFlora Defendants induced *unidentified* "distributor trainees to violate the [CBD] Policy … disqualifying them from being able to operate their own distributorships." Cmplt. ¶ 60. In other words, the gravamen of Kirby's tortious interference with prospective business relations claim is that the SunFlora Defendants purportedly precluded the matriculation of some unknown distributor trainees to distributors. As with its tortious interference with contract claim, Kirby's claim of tortious interference with prospective business relations fails because it fails to plead facts regarding multiple claim elements that would transform the mere possibility of a viable claim to one that is plausible.

For example, Kirby fails to plead the identity a single distributor trainee with which it had a distributor "business relationship" "approaching the formality of contract." Whether any distributor trainee matriculates to distributor depends on multiple factors other than continued compliance with Kirby's CBD Policy. As noted above, the base of Kirby's pyramid-shaped, multi-level direct sales network of independent contractors is comprised of dealers recruited by distributors. "The distributor subsequently may recommend that certain dealers be appointed to the position of distributor trainee…. Ultimately, a distributor trainee *may* operate his or her own distributorship *if* recommended by his or her appointing distributor and approved by Kirby." Cmplt. ¶ 12 (emphases added). Significantly, Kirby fails to allege that *any* distributor trainee purportedly induced to violate the CBD Policy had met its multiple contingencies.

Kirby also fails to plead plausible damages from the SunFlora Defendants' alleged interference. Kirby must plead facts showing that but for such interference, certain identified

distributor trainees – of which there are none – would have (a) been recommended by their [also unidentified] distributors for promotion to distributor themselves, (b) been approved by Kirby, (c) agreed to Kirby's form of distributor agreement, and (d) netted Kirby some marginal profit. Count III is utterly devoid of such facts. The Court cannot allow this claim to proceed on bare conclusions alone.

Like the interference with contract claim, the absence of any temporal allegations serves as an independent basis to doom this claim. Kirby fails to plead whether the SunFlora Defendants' acts of alleged disruption took place before or after adoption of the October 23, 2018 CBD Policy. Of course, they could not have had the requisite intent before Kirby issued the policy.

Because these myriad defects preclude Kirby from stating a claim for tortious interference with prospective business relationships, the claim should be dismissed.

> C. **KIRBY'S UNFAIR COMPETITION CLAIM FAILS AS A MATTER OF LAW**

Kirby's unfair competition claim seeks to impose tort liability on the SunFlora Defendants based on Quinn's and Ramker's alleged breaches of the non-solicitation clause in their Distributor Agreements. It is therefore inconsistent with the law, because "it is not a tort to breach a contract, no matter how willful or malicious the breach." *Salvation Army v. Blue Cross & Blue Shield of N. Ohio*, 92 Ohio App. 3d 571, 578 (1993). Because Kirby's attempt to tortify its contract claim fails as a matter of law, this Court should dismiss the unfair competition claim with prejudice.

For Count IV, alleging unfair competition, Kirby pleads as the operative facts that:

> In an effort to quickly expand SunFlora's distribution network, Quinn and Ramker have raided highly successful, long-time distributors and distributor trainees from Kirby by soliciting and recruiting them to sell or promote CBD products. Upon information and belief, the majority of stores selling SunFlora's products are

>owned and operated by current or former Kirby distributors and/or their spouses or immediate family members. Defendants' unfair commercial practices have harmed the business of Kirby and constitute unfair competition under the common law of Ohio.

Cmplt. ¶ 66. But hiring persons who work for another is not wrongful absent some independent duty in contract (e.g., a non-solicitation agreement) or tort (e.g., the improper use of confidential information) – and Kirby does not plead otherwise. Likewise, hiring persons to sell or promote CBD products is not wrongful vis-à-vis another employer absent some independent duty. The only relevant duty that Kirby alleges in its Complaint are that Quinn and Ramker were bound by the same non-solicitation clause[3] that appeared in the Distributor Agreement each had with Kirby, and allegedly were bound through their Distributor Agreements by the CBD Policy;[4] Kirby alleges no other duty related to soliciting Kirby distributors or distributor trainees.

Consequently, Kirby's unfair competition claim is based solely on Quinn's and Ramker's alleged breaches of the non-solicitation clause and CBD Policy that forms the basis of Kirby's breach of contract claim in Count I. Where, as here, "the duty allegedly breached by the defendant is one that arises out of a contract, independent of any duty imposed by law, the cause of action is one of contract." *Schwartz v. Bank One, Portsmouth, N.A.*, 84 Ohio App. 3d 806, 810 (1992). "Under Ohio law, the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." *Nichols v. Chicago Title Ins. Co.*, 107 Ohio App. 3d. 684, 697 (1995) (quoting *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981)).

---

[3] The SunFlora Defendants have counterclaimed for a declaratory judgment that the non-solicitation clause in Quinn's and Ramker's Distributor Agreements are invalid and unenforceable for multiple reasons. D.I. 28 Counterclaim Count I.

[4] The SunFlora Defendants have also counterclaimed for a declaratory judgment that the CBD Policy was not incorporated into or otherwise imposed by Quinn's and Ramker's Distributor Agreements. D.I. 28 Counterclaim Count II.

Moreover, Kirby's unfair competition claim does not allege harm that is any different than the harm alleged in the breach of contract claim: Kirby distributors and distributor trainees were solicited to leave Kirby, join SunFlora, and sell and promote CBD products. That the claims allege the same harm dooms the unfair completion claim for an independent reason: "an action arising out of contract which is also based upon tortious conduct must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach of the contract." *Textron Fin. Corp. v. Nationwide Mutual Ins. Co.*, 115 Ohio App. 3d 137, 151 (1996) (emphasis in original) (citing, e.g., *Cincinnati Gas & Elec. v. Gen'l Elec. Co.*, 656 F. Supp. 49, 63 (S.D. Ohio 1986)). Kirby fails to allege any such additional damages.

Finally, the economic loss rule also bars Kirby's unfair competition claim.

> The [Ohio] Supreme Court has held that the economic loss doctrine prevents recovery in tort for purely economic losses. *Corporex Dev. & Const. Mgmt., Inc. v. Shook, Inc.,* 106 Ohio St. 3d 412, 2005-Ohio-5409. "The well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Id.* at ¶ 6.

*Colorbok LLC v. Scottsdale Indem. Co.*, Case No. 14CVH-9269, 2015 Ohio Misc. LEXIS 13589, at *3-4 (Franklin C.P. Apr. 14, 2015) (granting motion for judgment on the pleadings as to negligence claim that mirrored contract claim). As shown above, Kirby's purported unfair competition claim pleads only economic harm: the loss of independent contractor distributors and distributor trainees who allegedly left to join SunFlora. For this third independent reason, Kirby's unfair competition claim should be dismissed with prejudice.

    **D.**    **KIRBY FAILS TO PLEAD A PLAUSIBLE CIVIL CONSPIRACY CLAIM**

Kirby's Count V attempts to plead a "civil conspiracy" as follows:

> Quinn, acting in concert with Ramker, SunFlora, and others not named as defendants, intentionally and maliciously combined, conspired, confederated, and agreed to commit torts and unlawful acts against Kirby including, without limitation, inducing or attempting to induce Kirby distributors to violate their Distributor Agreements with Kirby and distributor trainees to violate the Policy and terminate their prospective business relations with Kirby.

Cmplt. ¶ 71. These conclusory allegations fail to plead a plausible conspiracy claim. As recited above, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 555). Yet that is what Kirby provides with its accusation that the SunFlora Defendants "intentionally and maliciously combined, conspired, confederated, and agreed to commit torts and unlawful acts." Cmplt. ¶ 71. Missing are any facts describing how and when the purported conspiracy formed; the members of the conspiracy other than the SunFlora Defendants; the particular acts taken in the conspiracy's furtherance; whether and how the purported conspiracy damaged Kirby beyond the tortious interference claims; and so on. Put simply, Kirby's civil conspiracy claim merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" that fail to state a plausible claim on which relief may be granted. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

Because it is utterly devoid of any facts, this Court should dismiss Kirby's civil conspiracy claim.

### IV. <u>CONCLUSION</u>

The foregoing demonstrates that Counts II through V of Kirby's Complaint fail to state facts demonstrating the existence of plausible claims, requiring that each be dismissed.

Dated:   June 10, 2020

Respectfully submitted,

*/s/ Steven M. Auvil*
Steven M. Auvil (OH Bar No. 0063827)
Eleanor M. Hagan (OH Bar No. 0091852)
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, Ohio  44114
Telephone:   216 479 8500
Facsimile:   216 479 8780
steven.auvil@squirepb.com
eleanor.hagan@squirepb.com

Adam R. Fox (CA Bar No. 220584)
SQUIRE PATTON BOGGS (US) LLP
555 S. Flower Street, 31st Floor
Los Angeles, CA 90071
Telephone:   213 624 2500
Facsimile:   213 623 4581
adam.fox@squirepb.com

David S. Elkins (admitted *pro hac vice*)
SQUIRE PATTON BOGGS (US) LLP
1801 Page Mill Road, Suite 110
Palo Alto, CA 94304
Telephone:   650 856 6500
Facsimile:   650 843 8777
david.elkins@squirepb.com

*Attorneys for Defendants and Counterclaimants Marcus Quinn, Nathan Ramker, and SunFlora, Inc.*

## STATEMENT OF COMPLIANCE WITH LOCAL RULE 7.1(f)

This action has been assigned to a standard track. Defendants' motion complies with the twenty (20) page limit for standard cases.

*/s/ Steven M. Auvil*
One of the Attorneys for Defendants
and Counterclaimants

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2020 a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties listed on the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Steven M. Auvil*
One of the Attorneys for Defendants
and Counterclaimants
